OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
Respondents move to dismiss the amended petition (petition) in this CPLR article 78 proceeding.
Petitioner is the brother of a homicide victim, Darren McNamara. John Bonizio (Bonizio) was hired by Peter Rosner to avenge an insult to his daughter Cheryl Rosner. On August 25, 1982 Bonizio and an unknown companion carried out their contract by bludgeoning Darren McNamara to death. Bonizio was convicted of first degree manslaughter and sentenced in January 1984 to a term of imprisonment of 6 to 18 years, which he is serving. At his sentencing, the Assistant District Attorney stated that Bonizio was involved with organized crime and that he had been sentenced to a concurrent term of imprisonment for certain felonies related to organized crime. Petitioner alleges that Bonizio, and Bonizio’s associates, threatened his life, that of a witness to the crime and that of an undercover police officer.
All parties agree that Bonizio is currently an inmate of Queensboro Correctional Facility. Bonizio has become eligible for parole three times. On each occasion, parole has been denied after consideration, inter alla, of the strenuous opposition thereto on the part of the Attorney-General, petitioner and others. Petitioner, as the victim’s representative, is entitled, pursuant to Executive Law § 259-i (2) (c) (v), to present his views at the parole hearing of his brother’s killer. Parole has been denied each time and the next hearing has been scheduled for two years hence.
Petitioner seeks an order (1) which declares that permission for Bonizio to participate in a temporary release program constitutes an abuse of discretion and the permission should be revoked or in the alternative, (2) which limits Bonizio’s absences from the facility to periods which conform to the Correction Law. In addition, he requests (3) an order which declares the Day Reporting Center Program to be in conflict with the Correction Law, and (4) an order which directs respondents to notify petitioner and his family of any temporary release of Bonizio.
Respondents have cross-moved to dismiss the petition. They claim that inasmuch as Bonizio never participated in the Day *506 Reporting Center Program, the petition fails to state a cause of action. They also argue that the petition should be dismissed on the ground that petitioner lacks standing.
The question of how much time Bonizio has spent in or out of prison on temporary release is one of some confusion. Petitioner claims that he was told by Deputy Commissioner Philip Coombe, Jr. that during the first half of 1993, until the latest denial of parole, Bonizio was in a Day Reporting Center Program. Respondents claimed that Bonizio has never participated in such a program, but is a participant in a "work release program which consists of furloughs to an approved residence and employment, both of which have been verified.” Nowhere in respondents’ papers is there an exact account or any documentary proof of what time Bonizio spends outside the facility. Petitioner claims that Commissioner Coombe has told him that since Bonizio’s last parole denial, he has spent five days and nights of every week in prison and two days and nights on furlough, at home. Petitioner claims there is no authorization for such an arrangement in the Correction Law or the NYCRR. Petitioner also claims that Bonizio’s liberal releases have been tantamount to parole without the requisite notice to the petitioner.
Correction Law § 852 authorizes the Commissioner of the New York State Department of Correctional Services to set up a temporary release program for prison inmates who are within two years of becoming eligible for parole. Pursuant to statutory authority, the Commissioner has promulgated regulations governing the eligibility of inmates to participate in temporary release programs (see, Correction Law §§ 73, 112, 852; 7 NYCRR part 1900 et seq.). The temporary release program is comprised of a work release program, a furlough program, a community services program, an industrial training leave, an educational leave or a leave of absence (Correction Law § 851 [9]; 7 NYCRR part 1900). "Unlike parole status, work release does not allow an inmate complete release from incarceration” (State of New York ex rel. Hammer v Keane, 143 Misc 2d 132, 134). A work release program allows inmates the privilege of leaving the premises of an institution for a period not exceeding 14 hours in a day for the purpose of on-the-job training or employment (Correction Law § 851 [3]; 7 NYCRR part 1900). A furlough program allows an inmate the privilege of leaving the premises of an institution for a period not exceeding seven days for the purpose of seeking employment, maintaining family ties, solving family problems, seek *507 ing postrelease housing, or attending a short-term educational or vocational training course (Correction Law § 851 [4]; 7 NYCRR part 1900). The furlough program, as it applies to a "general confinement inmate”, is limited to a total of 28 days per year (7 NYCRR 1900.3 [c] [2] [i] [a]). Applications by inmates for any temporary release program are decided by a Temporary Release Committee and other administrative authorities in accordance with an elaborate point and review system (7 NYCRR 1900.4). Among other things, this system takes into consideration the nature of the inmate’s crime, his criminal background, his behavior in prison and on other releases and his immigration status. There is no express provision in the Correction Law for input into this decision-making process from the crime victim’s representative or any other outsider (compare, Executive Law § 259-i, with Correction Law § 855; cf., Matter of Vulpis v Department of Correction, 154 Misc 2d 625). Participation in a temporary release program by any inmate convicted of a crime involving the infliction of serious physical injury upon another requires the written permission of the Commissioner (Correction Law § 851 [2]). The statute provides that participation in a temporary release program is not a right but is a privilege which may be revoked by the administrative authorities at any time (Correction Law § 855 [9]; State of New York ex rel. Hammer v Keane, 143 Misc 2d 132, affd in part 171 AD2d 895 [2d Dept], lv denied 78 NY2d 863 [1991], supra; Rivera v State of New York, 169 AD2d 885, lv denied 77 NY2d 807; Matter of Young v Temporary Release Comm., 122 AD2d 606 [4th Dept 1986], lv denied 68 NY2d 611 [1986]).
It is impossible on these papers to determine whether Bonizio’s release program exceeds the limits imposed in the relevant statutes and rules or whether petitioner has been denied his right to notice and his right to be heard. The petition reports hearsay and respondents’ motion is extremely sketchy, in conflict with information reported by the petitioner and devoid of evidentiary facts. If Bonizio spends his weekends at home, as petitioner contends, it is difficult to see how this arrangement fits into the statutory scheme. As petitioner points out, furloughs are limited to a certain number of days per year. Respondents’ contention that this limitation does not apply because Bonizio is in a work release program is not consistent with the words of the statute. Work release involves absence from the facility only during the day, not at night. It is clear from the structure of the statute in *508 question that furloughs and work release are different temporary release programs; the one is not a subcategory of the other.
Only after an evidentiary hearing will I be able to determine whether there is merit to respondents’ claim that petitioner lacks standing to maintain this proceeding. The brief seven paragraphs of Deputy Superintendent Pitchford’s unenlightening affidavit fall far short of a complete and candid presentation that a minimum consideration of petitioner’s rights requires.
It seems to be admitted that a member of a victim’s family has an interest in what "temporary release” the Commissioner has approved and how that release is being carried out. There may be procedural bars to the petition — whether they derive from lack of standing or failure to fill out a required form — but surely the right to be informed and to raise questions is not to be denied serious consideration. Therefore the matter is set down for a hearing to ascertain the truth about Bonizio’s "temporary release.” The hearing will commence at 9:30 a.m. on September 1, 1994 in Part 34, 60 Centre Street, New York City. The respondents should be prepared to call their witnesses first. The parties are directed to as promptly as possible submit all necessary subpoenas and subpoena duces tecum to be ordered by the court.
Pending determination after hearing, the petitioner is entitled to notification of any temporary release or parole of Bonizio and respondents are directed to forthwith inform petitioner each and every time Bonizio is released without regard to the authority for the release. The petitioner is not required to file any additional request.